IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JULIE D. TONE,                          )
                                        )
            Plaintiff,                  )   TC-MD 160063C
                                        )
      v.                                )
                                        )
DEPARTMENT OF REVENUE,                  )
State of Oregon,                        )
                                        )
            Defendant.                  )   **FINAL DECISION**[1]

Plaintiff appealed Defendant's Notice of Assessment dated December 28, 2015, for the

2012 tax year. A trial was held on August 10, 2016, in the Courtroom of the Oregon Tax Court

in Salem, Oregon. C. Jeffrey Abbott, Attorney-at-Law, appeared on behalf of Plaintiff. Plaintiff

and John Bradley Fury (Fury) each testified on behalf of Plaintiff. Melinda Emerson (Emerson),

tax auditor, appeared on behalf of Defendant. Plaintiff objected to and the court excluded as

hearsay Emerson's proposed testimony describing the content of an email not in evidence that

she received from the Vice President of Plaintiff's former employer.[2] Plaintiffs' Exhibits 1

through 23 and Defendant Exhibits A through E were received without objection.

Plaintiff filed a Motion for Default on August 2, 2016, because Defendant's Answer was

not served on Plaintiff's authorized representative within 30 days from the date the Complaint

was served, as required by TCR-MD[3] 2 A. Plaintiff's counsel received a copy of the Answer

only when he requested it from Defendant. At the start of trial, the court denied Plaintiff's

---

[1] This Final Decision incorporates without change the court's Decision, entered February 3, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] As of the date of trial, Plaintiff no longer worked for the same employer as in 2012 and, due to her departure, she expressed concern about the reliability of recent statements made by her former employer.

[3] Tax Court Rule-Magistrate Division.

Motion for Default under TCR-MD 7 G because, at the time it was filed, Plaintiff had received a copy of Defendant's Answer.

## I. STATEMENT OF FACTS

In 2012, Plaintiff was an outside sales representative for DocuMart LLC (DocuMart), which prints letterhead, business cards, vehicle wraps, decals, promotional items, and more.[4] Her job duties included servicing existing clients and signing new clients. Plaintiff had approximately 200 clients in 2012.[5] She did not have a sales territory and could retain clients anywhere. Plaintiff had clients in Oregon, Washington, and some on the east coast. She testified that she was the top sales representative for the six DocuMart stores in Portland. (*See also* Def's Ex C at 2 (employer letter describing Plaintiff as "a top sale rep" with "many major accounts.").)

On a typical day in 2012, Plaintiff would go to her DocuMart office to pick up materials and then spend the rest of the day meeting with clients. Plaintiff testified that she was "paid to be in front of clients." Plaintiff met with clients to determine their needs and develop a plan for design and printing or to make installations. Other DocuMart employees installed vehicle wraps, but Plaintiff installed logos and graphics for her clients on windows, walls, and floors. She made such installations on a weekly basis. Plaintiff had some discretion to set rates for her jobs, including installations. Plaintiff sometimes attended trade shows with her clients to help them set up displays. She estimated that she attended 30 trade shows with her clients in 2012. Plaintiff built relationships with her clients to develop their loyalty. Plaintiff entertained her clients' "purchasing agents," who liked to be wined and dined. She often took clients to dinner or happy hour. When meeting prospective and new clients, Plaintiff would play a video on her

---

[4] Plaintiff was the primary witness at trial. All facts stated in the Statement of Facts are based upon Plaintiff's testimony unless otherwise noted by a citation or reference to another source.

[5] Defendant asked Plaintiff why the client list that Plaintiff provided as an exhibit included fewer than 200 clients. (*See* Ptf's Ex 20.) Plaintiff testified in response that her list identified only her "key" clients."

tablet about DocuMart, demonstrate how to use the online customer portal, and show some product samples.

Plaintiff had an office in one of DocuMart's locations in Northwest Portland where she typically spent no more than three hours per day. Plaintiff also had a home office. DocuMart is a 24-hour printing business, so she was on call at all times. (*See also* Def's Ex C at 4.) Charles Knudsen (Knudsen), Plaintiff's Area Manager and Vice President of DocuMart, wrote that, "[a]s a condition of her employment [Plaintiff] was required to use her own personal car and home in the performance of her duties." (*Id.*) He wrote that Plaintiff was "required to do planning, orders, sampling, meeting with clients and scheduling from home, which would require ordinary and necessary after hour work hours from [her] home office via [her] own resources such as internet, printer, computer, etc." (*Id.*)

Plaintiff received both a salary and sales commissions in 2012. Knudsen wrote that DocuMart did not have any "written policy regarding employees out of pocket expenses. The decision was left up to the discretion of the employee to do what was best for clients and prospects." (Def's Ex C at 1.) He wrote that Plaintiff was "required to travel and encouraged to entertain[,]" and "[i]t would be likely that [Plaintiff] would incur expenses related to her employment that would not be reimbursed such as; fuel, entertainment, gifts, continuing education and so on." (*Id.*) Knudsen wrote that it was customary for sales representatives "to discuss proposals, show samples, negotiate contracts and deliver orders over dinner and at various entertaining events as well as thank our clientele in the form of gifts which in return has proven to keep our clients loyal and a great referral source." (*Id.* at 4.)

/ / /

/ / /

A.      *Plaintiff's Claimed Unreimbursed Employee Business Expenses*

Plaintiff claimed $28,267 in unreimbursed employee business expenses on her 2012 income tax return.  (Ptf's Ex 22 at 10, 12.)  Of that amount, $5,879 was business mileage, based on 10,593 business miles; $1,289 was overnight travel; $5,729 was meals and entertainment (after the 50 percent reduction); and $15,370 was other business expenses.  (*Id.* at 12.)

1.      *Home office and related expenses*

Plaintiff's home office was a den in the back of her house that included a desk, file cabinets, a computer, a fax machine, boxes, and supplies.  Her computer was a laptop and a separate monitor that she used to view documents on a bigger screen.  Plaintiff occasionally took her monitor to trade shows for her clients to use.  She claimed a deduction of $169.99 for her monitor and provided a receipt for that purchase.  (Ptf's Ex 23.)  Plaintiff used her home office for some personal storage, but no personal activities.  Clients visited Plaintiff's home approximately once per week to pick up a proof or sign a document.

Plaintiff used the internet at her home primarily for work email.  She claimed a deduction of $622.41 for 100 percent of her home internet and provided her 2012 bills detailing monthly internet charges.  (*See* Ptf's Ex 4.)  Plaintiff used her home fax machine exclusively for work and did not recall making any personal use of her fax machine.  The fax machine did not include a phone line, only a fax line.  Plaintiff claimed a deduction of $195.58 for 100 percent of her fax line cost and provided 2012 invoices for monthly fax line charges.  (Ptf's Ex 2.)

Plaintiff claimed a deduction totaling $129.94 for software.  (Ptf's Ex 16 at 1-2.)  She bought software to convert one desktop publisher to another and a software plug-in for Outlook.  Plaintiff claimed a deduction of $9.99 for the e-book *Fifty Shades of Grey*.  (Ptf's Ex 9 at 1.)  She

/ / /

bought the book so that she would be knowledgeable when discussing promotions of related products with her client, an adult shop.

2.   *Tablet*

Plaintiff owned a tablet that she used to make presentations to existing and prospective clients. She needed a data plan for the tablet so that she could give a presentation to a client even if that client did not have WiFi. Plaintiff used her tablet for business on a daily basis and used it for personal activities approximately 10 percent of the time. She claimed a deduction of $300 for 100 percent of her data plan and provided her 2012 monthly bills. (Ptf's Ex 5.)

3.   *Cell phone*

Plaintiff used her cell phone to check email, text delivery drivers and other employees, take photos of installations, and take measurements. She claimed a deduction of $552.18 for 100 percent of the cost of her cell phone and related accessories and provided receipts for those items. (*See* Ptf's Ex 1.) Plaintiff claimed a deduction of $644 for cell service and provided 2012 invoices that service. (Ptf's Ex 8.) She calculated that business deduction by subtracting the basic service package cost of $50 per month and then taking 80 percent of the remaining cell service charges. (*See id.* at 2.) Plaintiff determined that 80 percent of her calls were business by reviewing one month of calls and counting the numbers of business and personal calls.[6]

4.   *Vehicle and parking expenses*

Plaintiff claimed 10,593 business miles in 2012 and provided a copy of her mileage log, which is a daily planner in which she recorded the clients she visited using acronyms. (*See* Ptf's Ex 11.) Each week noted an odometer reading and a weekly mileage total. (*See id.*) Plaintiff typically reported between 200 and 250 business miles per week. (*See id.*) Plaintiff kept her

---

[6] Plaintiff testified that she made a "P" notation by her personal calls in May 2012, but the exhibit she provided included no such notations. (*See* Ptf's Ex 8 at 25-27.)

mileage records on a weekly basis and tried to complete her mileage totals by the end of each week. She determined her mileage based on her client key and odometer readings. Plaintiff only recorded mileage between her office and her clients. She typically had to return to her office between client visits to pick up printing jobs and other materials. Plaintiff's log included only her "day time" mileage; it did not include any travel in her RV or overnight travel. She did not typically run personal errands in her work vehicle because her household owned four cars.

Plaintiff provided her client list with notations of the mileage from the Northwest DocuMart location to each client. (Ptf's Exs 17, 20.) On the week of May 14, 2012, Plaintiff reported 189 business miles in her log. (Ptf's Ex 11 at 29.) A tally of her mileage based on her client list yields 131.6 business miles, although Plaintiff did not identify the mileage associated with two clients, VGS and MC. (Ptf's Exs 17 at 2; 20.) On the week of October 15, 2012, Plaintiff reported 237 business miles in her log. (Ptf's Ex 11 at 51.) A tally of her mileage based on her client list yields 147.1 business miles. (Ptf's Exs 17 at 2; 20.)

Plaintiff provided some 2012 service records that list Plaintiff's odometer readings as 119,801 on August 11, 2011; 131,530 on May 17, 2012; 136,975 on October 17, 2012; and 142,341 on March 14, 2013. (Ptf's Ex 11 at 2-5.) The 2012 odometer readings are consistent with the readings Plaintiff recorded in her log. (*See id.* at 29-30, 51-52.)

Plaintiff claimed a deduction of $316.86 for parking and car wash expenses. (Ptf's Ex 12.) She provided parking ticket stubs showing dates, times, and payments, as well as some handwritten notes detailing parking dates and payments. (*Id.*) Plaintiff provided a receipt for a $15 carwash on December 10, 2012, and a hand-written invoice for "SUV Detail" for $129 on May 11, 2012. (*Id.* at 18, 21.) Plaintiff's exhibits do not list any business purpose, but Plaintiff testified that they were for client visits, networking lunches, and client entertainment.

5. *Travel expenses—lodging and meals*

Plaintiff claimed a deduction of $1,288.78 for travel expenses and provided receipts and invoices for lodging and meals. (Ptf's Ex 3.) She provided duplicates of most receipts and invoices, one copy with a note identifying the client and one without. (*See id.*)

Plaintiff claimed expenses of $89.91 for a hotel stay in Redding, California and provided an invoice and receipt. (Ptf's Ex 3 at 2.) She testified that she delivered a product to a client there, but provided no written evidence identifying the client or corroborating her explanation.

Plaintiff claimed expenses totaling $146.15 for two different trips to the Oregon Coast, one of which was for two nights. (Ptf's Ex 3 at 3, 7-8, 12-13, 18.) Her notes stated the purpose was a client visit. (*Id.*) Plaintiff testified that individuals she visited were prospective clients who owned an RV park at the coast. She used her RV to bond with the prospective clients and was successful in signing them as clients. On her first trip, Plaintiff discussed printing brochures and catalogues and, on her second trip, she delivered materials.

Plaintiff claimed expenses totaling $375 for three hotel rooms at the Hotel Oregon and wrote a note that the purpose of the trip was contract negotiation with a client. (*See* Ptf's Ex 3 at 4-6, 15-17.) She testified that she also attended a wine festival with the client.

Plaintiff claimed expenses of $195 for six nights of lodging at the Winchester Bay RV Resort. (*Id.* at 9, 11.) She testified that attended Dune Fest 2012 with a prospective client and she was successful signing that account. Defendant asked Plaintiff how she stayed for one week, given that Plaintiff's mileage log listed meetings with 17 clients that same week. (*See* Ptf's Ex 11 at 40.) Plaintiff testified that she had to reserve the site for one week due to a minimum booking requirement, but did not stay the entire week.

/ / /

Plaintiff claimed unidentified expenses totaling $347.92 at the Rogue Brewery in Newport, Oregon, on February 22, 2012, and February 24, 2012. (Ptf's Ex 3 at 19.) Plaintiff testified that the brewery was a potential client and she discussed printing their labels. Defendant asked Plaintiff why she wrote in her mileage log that she was "off" on February 24, 2012, and crossed out the remaining dates that week. (*See* Ptf's Ex 11 at 17.) Plaintiff testified that she was off on February 24, 2012, but not the rest of the week.

Plaintiff claimed $49.50 for lodging in Albany, Oregon. (Ptf's Ex 3 at 19.) She testified that she took a client to watch sprint boat races. Plaintiff claimed a deduction of $38.28 for cab fare. (*Id.*) She took a cab when her car broke down while visiting a client. Plaintiff claimed a deduction of $46 for two nights of lodging in Chehalis, Washington. (*Id.*) She took a client to a car show. Fury paid for that expense and she paid him back.

6.     *Meals and entertainment*

Plaintiff claimed a deduction for client entertainment based on $6,711 of expenses.[7] (*See* Def's Ex D at 1.) She provided a contract for a limousine rental on November 10, 2012, for $494. (Ptf's Ex 17 at 3.) Plaintiff used the limousine rental to take several clients to a charity auction. Her notes identify four clients. (*See id.* at 4.) Plaintiff bought a package of Trailblazers tickets for entertaining clients. (*See also* Def's Ex D at 13 (identifying the claimed purchase amount as $5,145).) She did not provide any documentary evidence substantiating that purchase, although she testified regarding her recollections of which clients received which tickets. Fury joined Plaintiff at some of the Trailblazers games. Plaintiff provided a receipt for $400 to Eugene Lodge #11 for October 27 and November 17. (Ptf's Ex 15 at 6.) A handwritten note identified two clients. (*Id.*) No business purpose was identified. (*See id.*)

---

[7] That total includes an expense of $445 for a boat rental. (Def's Ex D at 13.) Plaintiff provided no evidence of that item.

Plaintiff claimed a deduction for meals based on of $7,999 of expenses.[8] (Ptf's Ex 10 at 2.) She provided her receipts for meals with clients, most of which included a note identifying the client, but no additional notes regarding the specific individual with whom she met or the business purpose of the meeting.[9] (*See* Ptf's Ex 10.) It was Plaintiff's practice to write the client's name on a receipt as soon as she received it. Fury would sometimes pay for meals – approximately 1 out of 20 meals – and she would pay him back. Fury testified that he is Plaintiff's boyfriend and that he paid for some of her work expenses, such as client meals. He testified that Plaintiff paid him back in cash within one or two days.

7.  *Gifts*

Plaintiff claimed a deduction for gifts based on receipts and invoices totaling $4,978. (Def's Ex D at 1, 16-18[10]; Ptf's Exs 13-15.) Some of the receipts included handwritten notes identifying the client who received the gift. (*See* Ptf's Exs 13-15.) No further detail was provided in Plaintiff's written records concerning the business purpose of the gifts or the specific individual who received the gift. (*See id.*) The majority of gifts exceeded $25.[11] (*See id.*)

Plaintiff testified describing her various gifts. She typically gave gifts to her clients on holidays. Plaintiff also purchased chocolates to give to clients in DocuMart coffee mugs. She provided receipts totaling $658.21 for chocolates. (Ptf's Ex 14 at 3, 6, 12-13, 33, 35-36.) Plaintiff prepared different gift baskets for her clients depending on their interests; for instance, she gave some clients "herb baskets" and other clients "beer baskets." Plaintiff testified that her

---

[8] Defendant calculated Plaintiff's total claimed meals deduction to be $7,641. (Def's Ex D at 1.)

[9] Plaintiff testified that two receipts were duplicates and two lacked any client identification. (Ptf's Ex 10 at 66, 71, 77, 101.)

[10] Defendant included two categories of expenses: "gifts" and "supplies." (Def's Ex D at 1, 16-18.) Plaintiff's testimony regarding the items listed under "supplies" indicated that they were also gifts.

[11] Of the receipts provided in Ptf's Ex 15, only four were for $25 or less. (Ptf's Ex 15 at 1, 18, 22, 23.)

other gifts included an audio book, a calendar, Christmas ornaments, a hat, a GoPro mount, a fire pit, wine glasses, gift certificates, an inner tube rental, doughnuts, cards, a drop cloth, a golf outing, a magnification mirror, college sports items, wine, flowers, liquor, meat for grilling, and a meat rack and tenderizer. (*See* Ptf's Ex 6 at 13, Ex 9 at 3, Ex 14, Ex 15.)

Plaintiff's exhibits include discrepancies regarding which client received which gift. For instance, Plaintiff provided two receipts documenting a liquor purchase on February 15, 2012, for $62.90. (Ptf's Ex 15 at 17, 24.) The two receipts reflect the same purchase, yet each identified a different client as the gift recipient. Plaintiff provided two more pairs of receipts identifying different clients as the recipients of the same gifts. (*See id.* at 17, 21, 23.) Plaintiff claimed expenses for flowers delivered to Marie Tone, Plaintiff's mother. (*See* Ptf's Ex 15 at 11-12.) Plaintiff testified that her mother delivered the flowers to a client.

8.      *Supplies, shipping, and postage*

Plaintiff claimed a deduction totaling $1,057.86 for supplies and provided receipts and invoices in support of that amount.[12] (Ptf's Ex 6.) Plaintiff described the business purpose of the items she purchased, including a wastepaper basket for her car, light bulbs for installations, Velcro for table displays, rugs for installations and at trade shows, a box for carrying samples, bags for organizing pieces in her tool box and for prizes at trade shows, paint and thumbtacks for trade shows, soap for installing window decals, batteries for a paper gauge, ponchos for installing a sign in the rain, two vacuum cleaners for cleaning up after installations, bottled water for installing signs, bags and bins for trade shows, Band-Aids for her car toolbox, a heater for trade shows, a level for installations, a cord for hooking up her monitor to a tablet at a trade

/ / /

---

[12] The receipts Plaintiff provided to Defendant totaled $1,198. (*See* Def's Ex D at 5-6.)

show, a charger for her laptop, folding chairs for trade shows, and squeegees and a thermometer, for installations. (*Id.* at 1-26.)

Plaintiff claimed a deduction of $21.12 for shipping and postage and provided two invoices and a receipt from DocuMart in support of that deduction. (Ptf's Ex 7.) The exhibits do not identify the item shipped, the sender, or the recipient. (*See id.*) Plaintiff testified that she paid for shipping and postage to send samples to clients.

B.      *Defendant's Audit and Conference Adjustments*

Defendant provided spreadsheets detailing Plaintiff's claimed expenses and an explanation for each disallowed item. (*See generally* Def's Ex D.) Defendant disallowed tablet, fax, internet, office supplies, and other supplies because Plaintiff lacked a qualifying "home office." (*Id.* at 1.) It disallowed cell phone expenses because Plaintiff did not incur an "additional expense" for her business use. (*Id.*) Defendant disallowed travel, entertainment, gifts, meals, shipping and postage, parking, and various book and software expenses either because no business purpose was identified or no proof of payment was provided. (*Id.*) It disallowed car wash and detail expenses because she was not traveling away from home. (*Id.*) Defendant allowed Plaintiff a deduction of $2,130 for professional dues. (*Id.*)

## II. ANALYSIS

The issue presented is whether Plaintiff provided adequate substantiation for her 2012 tax year deductions for unreimbursed employee business expenses.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's

jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[13] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issues presented in this case, "Oregon law makes no adjustments to the rules under the [IRC] and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiff must establish her claim by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.      *Unreimbursed Employee Business Expenses, Generally; Strict Substantiation*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]'

---

[13] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC. Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions").

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). The estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A). *See also* Treas Reg § 1.274-5T(a). Taxpayers must substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d).

> "To meet the 'adequate records' requirements of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *."

Treas Reg § 1.274-5T(c)(2)(i). "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *." Treas Reg § 1.274-5T(c)(1).

/ / /

B.    *Home Office and Related Expenses*

Plaintiff deducted the cost of a monitor.  Computers and "peripheral equipment (as defined in section 168(i)(2)(B))" are listed property unless they are "used exclusively at a regular business establishment and owned or leased by the person operating such establishment."  IRC § 280F(d)(4).[14]  Plaintiff's computer monitor does not meet the exception in IRC section 280F(d)(4)(B) and, therefore, was listed property subject to the strict substantiation requirements of IRC section 274(d).  Plaintiff offered no evidence documenting the business use of her computer and monitor.  As a result, she is not allowed any deduction for those items.

Plaintiff deducted 100 percent of her home internet expenses and testified that she used her home internet access primarily for work email.

> "A taxpayer may deduct the cost of home internet service pursuant to [IRC]
> section 162 if the expense is ordinary and necessary in the taxpayer's trade or
> business. * * * To the extent that the taxpayer's home internet expense is
> attributable to nonbusiness use, it constitutes a nondeductible personal expense.
> * * * [H]ome internet expenses are not subject to the strict substantiation rules of
> section 274(d)."

*Noz v. Comm'r*, 104 TCM (CCH) 350, WL 4344158 at *8 (2012) (citations omitted).  Plaintiff's home internet connection was not used solely for business purposes and Plaintiff provided no evidence from which the court can make a reasonable allocation between her business and personal use.  Plaintiff's internet expense deduction is denied.

Plaintiff deducted 100 percent of the cost of her home fax line, which she used exclusively for business.  The court found Plaintiff's testimony regarding her use of the fax line persuasive.  Plaintiff provided invoices establishing that she paid $195.58 for her fax line in 2012.  Plaintiff is allowed a deduction based on those expenses.

---

[14] Plaintiff's home office does not qualify as a regular business establishment because it does not fall within any of the exceptions listed in IRC section 280A(c)(1).

Plaintiff claimed a deduction totaling $129.94 for business software and provided receipts to prove the purchases. Plaintiff is allowed a deduction based on those expenses.

Plaintiff claimed a deduction for the cost of an e-book. She claimed the business purpose was to become more knowledgeable when discussing promotion of related products with a client. Plaintiff's e-book purchase is primarily personal in nature and may not be deducted as a business expense. *See, e.g.*, *Stemkowski v. Comm'r*, 690 F2d 40, 47 (2d Cir 1982) (citations omitted) (holding that "[t]he purchase of general newspapers is personal and cannot be deducted.").

C.      *Tablet*

Plaintiff claimed a deduction for 100 percent of the costs associated with using her tablet. As discussed above, computers and "peripheral equipment" are listed under IRC section 280F(d)(4)(A)(iv), subject to an exception not applicable here. IRC section 168(i)(2)(B)(ii) defines "computer" as "a programmable electronically activated device which – (I) is capable of accepting information, applying prescribed processes to the information, and supplying the results of these processes with or without human intervention, and (II) consists of a central processing unit containing extensive storage, logic, arithmetic, and control capabilities." A tablet is a "computer" within the meaning of IRC section 168 and, therefore, is listed property subject to strict substantiation under IRC section 274(d). Plaintiff gave persuasive testimony regarding the general nature of her business use of her tablet, but failed to provide a log or any other type of documentary evidence to substantiate the amount of her business use as compared with her personal use. *See* Treas Reg § 1.274-5T(b)(6). Plaintiff's tablet deduction is denied.

/ / /

/ / /

/ / /

D.      *Cell Phone*

As of the 2011 tax year, cell phones were no longer "listed property."  *See* IRC §
280F(d)(4).[15]  Plaintiff claimed a deduction of $552.18 for 100 percent of the cost of her cell
phone and related accessories.  She did not allocate those costs between business and personal
use, nor did she provide evidence from which the court can make a reasonable allocation.
Plaintiff also deducted $644 for cell service.  She determined that amount by allocating the $50
base plan rate to personal use and deducting 80 percent of the remaining charges.  Plaintiff
testified that she reviewed one monthly bill to determine how many calls were personal and how
many were business, although she did not provide a copy of that evidence to the court.
Nevertheless, the court is persuaded that Plaintiff was required to use her cell phone for business
purposes and her method of allocating between business and personal use was reasonable.
Plaintiff is allowed a deduction of $644 for cell phone expenses.

E.      *Vehicle and Parking Expenses*

Passenger automobiles are listed property subject to the strict substantiation requirements
of IRC section 274(d).  *See* IRC § 280F(d)(4)(A)(i).  Plaintiff claimed a mileage deduction for
use of her car based on 10,593 business miles and provided a log and service records to support
her deduction.  Plaintiff's log matched her service records with respect to odometer readings,
which lends some credibility to the log.  However, Plaintiff's log lacked specificity with respect
to the amount of her business travel and the dates upon which such travel occurred.  Rather than
separately state the mileage for each business trip, Plaintiff listed her total business mileage for
the week.  When the totals for two weeks were compared to the mileage identified in Plaintiff's

---

[15] "Cellular phones" were listed property under IRC section 280F(d)(4) as of the 2009 tax year.  Cell
phones were removed from the strict substantiation requirements of IRC section 274(d) by the Small Business Jobs
Act of 2010.  Pub L 111-240, § 2043, 124 Stat 2504, 2560 (2010).

client list, the numbers did not match. For each sample week, Plaintiff reported more business mileage than her client list supported: the week of May 14, 2012, Plaintiff reported 189 miles but using Plaintiffs own method of calculation the court found only 131.6 miles. Similarly, the week of October 5, 2012, Plaintiff reported 137 miles but the court found only 147.1. It is unclear how Plaintiff calculated her weekly mileage. Although the court is persuaded that Plaintiff used her personal vehicle for business purposes in 2012, the court is unable to determine the amount of her business mileage and may not guess. Plaintiff's mileage deduction is denied.

Plaintiff deducted parking expenses of $316.86, which she testified were for client meetings, networking lunches, and client entertainment. The parking stubs provided contain no notations identifying their business purpose, such as the client visited or the purpose of the meeting. Absent such evidence, Plaintiff's parking expense deduction must be denied.

Plaintiff deducted costs associated with car washes and a vehicle detail. Those expenses are generally personal in nature and Plaintiff failed to identify any business purpose to support a deduction for those expenses.

F.      *Travel Expenses—Lodging and Meals*

Traveling expenses, including meal and lodging incurred while away from home for business, are subject to the strict substantiation requirements under IRC section 274(d). Plaintiff deducted $1,288.78 in expenses for lodging and meals. For the reasons discussed below, the court finds that Plaintiff's lodging expenses either lacked adequate substantiation or are properly considered as entertainment expenses.

Plaintiff failed to adequately substantiate the business purpose of her travel to Redding, California on May 4, 2012, or her travel to the Oregon Coast on January 14, 2012. Although she gave testimony to describe the business purpose of each trip, she provided no notes or other

documentary evidence to corroborate her testimony. Plaintiff deducted two multi-day trips to the Oregon Coast, each of which was to meet with current or prospective clients. One trip was to deliver materials to a client, but also to bond with the client by staying in her RV. Plaintiff stayed two nights, indicating her primary purpose was either client entertainment or personal recreation. The other trip was to attend Dune Fest 2012 with a prospective client, which constitutes entertainment. Plaintiff traveled to Chehalis, Washington in order to attend a car show with a client and to Albany, Oregon to attend sprint boat races with a client. Both such activities are entertainment. Plaintiff deducted three hotel rooms at the Hotel Oregon in order to attend a wine festival with clients and to negotiate a contract. That trip constituted entertainment. Because Plaintiff's remaining lodging expenses are entertainment expenses, they must meet the requirements of IRC section 274(a), discussed below. *See Walliser v. Comm'r*, 72 TC 433, 439 (1979) (evaluating taxpayer's travel expenses under IRC section 274(a) because they constituted entertainment); *see also* Treas Reg § 1.274-2(b)(1)(i).

Plaintiff deducted expenses totaling $347.92 at the Rogue Brewery in Newport, Oregon, on February 22, 2012, and February 24, 2012. She claimed the business purpose of those visits was to meet with the brewery as a prospective client. Plaintiff did not provide any further evidence of who she met with or the nature of the discussion. Her mileage log lists her as "off" that week. Plaintiff's assertion that her visit to the Rogue Brewery was primarily for business lacks credibility because she failed to keep a record detailing the business purpose of the trip and she made a contradictory note in her log. The court finds the expenses were primarily personal.

G. *Meals and Entertainment*

IRC section 274(a)(1)(A) provides that no deduction shall be allowed for any item

"[w]ith respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the

item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business[.]"

In other words, a taxpayer may only deduct entertainment expenses if they are either (1) "directly related to" or (2) "associated with" the active conduct of the taxpayer's business. *See Danville Plywood Corp. v. U.S.*, 899 F2d 3, 7 (8th Cir 1990). Even if an entertainment expense qualifies under IRC section 274(a), it must also meet the strict substantiation requirements under IRC section 274(d). *See Harding v. Dept. of Rev.*, 13 OTR 454, 461 (1996) (denying taxpayer's claimed entertainment and meal expenses for failure to adequately substantiate those deductions where "[t]axpayer's records consist[ed] of receipts showing a date, amount, receipt number, and a hand-written name or two[,]" but not "the name or location of the restaurant" or the "business purpose for the expense").

The applicable Treasury Regulations set out a lengthy four-part test to determine whether an entertainment expenditure was "directly related" to the active conduct of the taxpayer's trade or business. *See* Treas Reg § 1.274-2(c)(3)(i)-(iv). In applying that test, the Tax Court has noted that, "for an expenditure to be directly related to the active conduct of the taxpayer's trade or business, it must be shown that the taxpayer had more than a general expectation of deriving some income or business benefit from the expenditure, other than the goodwill of the person or persons entertained." *Walliser*, 72 TC at 441. In order to qualify under the "associated with" test, entertainment must be "associated with the active conduct of trade or business" and must directly precede or follow "a substantial and bone fide business discussion." Treas Reg § 1.274-2(d)(1). The regulations further define those phrases. Treas Reg § 1.274-2(d)(2), (3).

Mere "goodwill" entertainment is insufficient to qualify for a deduction. In *Walliser*, the taxpayer incurred expenses to participate in guided foreign travel with others in his industry

group in order to meet potential clients and to "maintain good personal relations" with existing clients. *Id.* at 438, 441-42. Even though the court found such expenses were ordinary and necessary business expenses under IRC section 162, it denied any deduction under IRC section 274(a) because they were not "directly related" to the taxpayer's business. *Id*. at 442. In *Danville*, the court denied a deduction for the expense of sending employees and customer representatives to the Super Bowl because it "appear[ed] to have been little more than a group social excursion with business playing a subsidiary role." 899 F2d at 9. In *Leon v. Comm'r*, 37 TCM (CCH) 1514 (1978), the court denied a deduction for expenses associated with cocktail and dinner parties given by a salesman and his wife to customers and potential customers because the purpose was to "create good will" and "cement business friendships and relationships." "No evidence was introduced to show that any particular transaction was the subject of a business meeting or conference at any one of these parties. There was no evidence of a bona fide business meeting held either immediately before or immediately after any one of the parties in question." *Id.*

In addition to the travel expenses discussed above, Plaintiff deducted $6,711 in client entertainment expenses associated with reserving a limousine to attend a charity auction with clients and purchasing a package of Trailblazer tickets to attend basketball games with clients. Plaintiff deducted $7,999 for client meals and provided receipts including notes identifying the client, but no additional information. Plaintiff's evidence of her client meal and entertainment expenses is inadequate to satisfy the requirements of IRC section 274(a) and the accompanying regulations. She failed to identify the individuals entertained, the business discussed, or the specific business benefit she hoped to obtain from the meal or other entertainment. Plaintiff's testimony suggested that her primary purpose for dining with and entertaining her clients was to

maintain goodwill and solidify relationships, which are insufficient under IRC section 274(a). Plaintiff's client meal and entertainment expense deductions must be denied.

H.    *Gifts*

Deductions for business gifts are limited to $25 per recipient per tax year.  IRC § 274(b). If the taxpayer gives a gift in excess of $25, the taxpayer may deduct $25 for that gift.  *Feinstein v. Comm'r*, 34 TCM (CCH) 830 (1975).  Certain items are not treated as gifts for purposes of IRC section 274(b), such as "an item having a cost to the taxpayer not in excess of $4.00 on which the name of the taxpayer is clearly and permanently imprinted and which is one of a number of identical items distributed generally by the taxpayer."  IRC § 274(b)(1)(A).  Gift deductions are subject to strict substantiation under IRC section 274(d).  "The elements to be proved with respect to an expenditure for a gift are –

"(i) *Amount.* Cost of the gift to the taxpayer;

"(ii) *Time.* Date of the gift;

"(iii) *Description.* Description of the gift;

"(iv) *Business purpose.* Business reason for the gift or nature of business benefit derived or expected to be derived as a result of the gift; and

"(v) *Business relationship.* Occupation or other information relating to the recipient of the gift, including name, title, or other designation, sufficient to establish business relationship to the taxpayer."

Treas Reg § 1.274-5T(b)(5).

Plaintiff claimed a gift deduction based on expenses totaling $4,978.  She provided receipts with some handwritten notes identifying the client who received gift, but not the specific individual who received the gift.  Plaintiff's evidence of her gifts is inadequate and unpersuasive for a few reasons.  First, the receipts and invoices do not provide specific information about the recipient of the gift (name, title), nor do they identify the business reason for the gift.  Second,

many of the gifts exceed the $25 limit per individual per year. The court could attempt to determine which clients received gifts from Plaintiff in 2012 and allow a deduction based on $25 per client. However, Plaintiff provided inconsistent notes regarding which client received which gift, rendering her evidence unreliable.

Plaintiff provided receipts totaling $658.21 for chocolates, which she provided to clients in DocuMart mugs. She did not incur any cost for the DocuMart mugs, which were presumably paid for by her employer. Mugs featuring DocuMart's name may be excluded from the gift definition under IRC section 274(b)(1)(A) if they each cost $4 or less. However, there is insufficient evidence to reach that conclusion because Plaintiff presented no evidence of the cost of the mugs (which were likely deducted by Plaintiff's employer) or of the total number of mugs with chocolate that she distributed to clients. Plaintiff's gift deduction is denied.

I.      *Supplies, Shipping, and Postage*

Plaintiff claimed a deduction totaling $1,057.86 for supplies and provided receipts and invoices in support of that amount. She identified one receipt for a wall calendar for $7.99 as a client gift, reducing her total supplies expense to $1,049.87. (*See* Ptf's Ex 6 at 13.) Plaintiff testified in detail about how she used the supplies in her business. The court is persuaded that Plaintiff supply purchases were ordinary and necessary business expenses. Such expenses are not subject to strict substantiation and, in this case, are sufficiently established based upon Plaintiff's testimony and her receipts. The deduction is allowed.

Plaintiff claimed a deduction of $12.12 for shipping and postage. Her evidence of those expenses consisted of DocuMart invoices and a receipt. Plaintiff testified that she paid for shipping and postage to send samples to clients, but provided no explanation why she had to pay her employer for the cost of shipping samples to clients. The deduction is denied.

### III. CONCLUSION

Upon careful consideration, the court concludes that Plaintiff is allowed 2012 Schedule A deductions for the following unreimbursed employee business expenses: $196 for her fax line; $130 for software; $644 for cell phone service; and $1,050 for supplies. Plaintiff's remaining unreimbursed employee business deductions are denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part. Plaintiff is allowed a 2012 Schedule A deduction of $2,020 in addition to the $2,130 previously allowed by Defendant for professional dues. Plaintiff's remaining deductions are denied.

Dated this ____ day of February 2017.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on February 24, 2017.*